Margaret BOYER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 78–152C(A).

United States District Court, E. D. Missouri, E. D.

Aug. 4, 1978.

LeRoy M. Steiner, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM–OPINION

HARPER, District Judge.

Margaret Boyer has petitioned this District Court for judicial review of the final

decision of the Secretary of Health, Education and Welfare, pursuant to the provisions of Title II of the Social Security Act, as amended, 42 U.S.C. § 401, et seq.

Plaintiff filed her application to establish a period of disability on March 22, 1973. The application was denied, and is not now subject to review. On January 26, 1976, plaintiff filed her second application to establish a period of disability and to obtain insurance benefits. The application was considered and reconsidered by the Social Security Administration and the claim was ultimately denied.

Plaintiff requested a hearing which was held on February 3, 1977, at which she appeared and testified. She was represented by counsel. The Administrative Law Judge ruled against the plaintiff on June 17, 1977, finding that plaintiff was not under a "disability", as defined in the Social Security Act, at any time when she met the earnings requirements of the law. On December 5, 1977, the Appeals Council affirmed the Administrative Law Judge's decision, except to hold that plaintiff's insured status lasted only until June 30, 1976.

Thus, the decision of the Administrative Law Judge, as amended, stands as the final decision of the Secretary. Plaintiff has filed a timely application for judicial review and the Secretary has filed a transcript of the record of the proceeding, along with his answer to the complaint. Both parties have filed motions for summary judgment, with accompanying memoranda.

It is undisputed that plaintiff met the special earnings requirement of the Act, so as to be in an insured status only through June 30, 1976. The Appeals Council considered evidence of a psychiatric examination conducted after the June 30, 1976 deadline. Even so, this Court will consider only those medical reports and evidence dated prior to June 30, 1976.

Plaintiff was born on December 8, 1935. She claims that she became disabled on May 15, 1972. Her chief complaints relate to intestinal adhesions, and constant pain in the lower back which radiates to the left side, to the stomach and right leg. She has worked intermittently from 1948 through February, 1974. Her occupations consisted primarily of factory work in shoe factories, but also included work as a waitress and cashier.

The evidence reveals that claimant has had myriad stays in hospitals, and has been having physical problems since 1960. She was discharged from Deaconess Hospital in St. Louis, Missouri on June 18, 1972 for intestinal obstruction due to adhesions, and Michel's diverticulum (Tr. 118). She was again in Deaconess Hospital from March 27, 1972 to April 1, 1972 for bowel obstruction. No action was taken at that time (Tr. 120–121).

Plaintiff was admitted to the University of Missouri Medical Clinic (hereinafter U.M.M.C.), at Columbia, Missouri on September 28, 1972 and discharged on October 4, 1972 for complaints of pain. The report states that the pain may be psychogenic, and that she had a possible hysterical personality (Tr. 123).

At Deaconess Hospital, from December 4, 1972, to December 10, 1972, plaintiff was diagnosed as having a bowel obstruction and anemia. The report notes that plaintiff has a low pain threshold (Tr. 126).

On June 6, 1973, in a medically unsupported document, Dr. Clinton C. Hayes, Jr. stated that plaintiff was unable to seek active employment (Tr. 127).

Dr. L. N. Newmark, on July 27, 1973, stated that due to her adhesions, bowel obstructions, Demoral abuse, and hysterical personality, she was permanently and totally disabled (Tr. 128–130).

On April 22, 1976, Dr. Hayes found that an ileosacral lesion was causing the pain. He felt that the pain was real, but not totally disabling. He suggested additional investigation, in order to determine her true physical capabilities (Tr. 132–133).

From January 17, 1971 to February 10, 1971, plaintiff was in the hospital for an adhesialysis and appendectomy, both performed by James Griggs, M.D. (Tr. 143).

In September, 1964, plaintiff was at U.M.M.C. The diagnosis was cervical lacerations, chronic cystic cervicitis, and squamous metaplasia. She was treated by a vaginal hysterectomy (Tr. 145–146).

In March of 1962, plaintiff was treated at U.M.M.C. for a cervical laceration caused by giving birth (Tr. 147–148). On August 4, 1960, plaintiff had a trachelorrhaphy performed at U.M.M.C. for hemorrhaging (Tr. 149–150). On July 27, of that same year, plaintiff had been admitted to U.M.M.C. for a Dilitation and Curettage and a trachelorrhaphy.

All of the following reports originated after June 30, 1976, and cannot be considered in the evaluation of plaintiff's disability. On December 8, 1976, in a letter unsupported by clinical findings, Emiliano C. Umali, M.D., stated that plaintiff was unable to work because of constant back pain (Tr. 158). On December 21, 1976, Reno R. Cova, Jr., M.D., examined plaintiff, and concluded that there were signs of radiculopathy, and perhaps a ruptured lumbar disc. He concluded that she was disabled (Tr. 159). In a report done for Dr. Cova's consideration, D. J. Schreiber, M.D., concluded, after an EMG and nerve conduction velocity study, that these tests were normal. He found some evidence of functional overlay, but doubted that the pain had organic etiology (Tr. 183). A report from Christian Hospital Northwest, St. Louis, Missouri, showed that on February 18, 1977, plaintiff had a ruptured lumbar spine. She was treated with transcutaneous nerve stimulation, but left before the pain was eliminated (Tr. 190–191). On March 22, 1977, Dr. Cova concluded that plaintiff was totally disabled (Tr. 204). Dr. Umali, on March 25, 1977, concluded that plaintiff was totally disabled (Tr. 205). On May 18, 1977, J. E. Frye, D.O., concluded that plaintiff's problem was not orthopedic, but one relating to functional abnormality and adhesions (Tr. 206–207). A psychiatric examination of plaintiff, on October 31, 1977 reported by R. Raymond Knowles, M.D., stated that plaintiff has a severe psychopathology. The prognosis was guarded and "her reaction of invalidism has reached a phase of chronicity, so that it has lasted for a period in excess of twelve months." (Tr. 213–215.)

After hearing the evidence, the Administrative Law Judge concluded by finding:

(1) The claimant met the special earnings requirements for disability purposes on February 15, 1974, the date she stated she became unable to work and she continued to meet them until March 31, 1977, but not thereafter.

(2) The claimant is 41 years old, has eight years of schooling and has worked as a waitress, dishwasher and a salad maker and in a shoe factory rounding edges of soles, sanding platforms and heels, gluing vamps and as a sole trimmer and inspector and she also worked in quality control for a panel manufacturer and as a supervisor of a coloring table for a leather company.

(3) The evidence shows the claimant experiences some pain and discomfort in the abdomen and back which would preclude her from doing heavy manual labor or work which requires frequent bending, lifting and stooping or standing for long periods of time but she is able to otherwise function in a normal manner both mentally and physically.

(4) The claimant was not prevented from engaging in substantial gainful activity on or before March 31, 1977, the date she last met the special earnings requirements for a continuous period which lasted or could be expected to last for at least 12 months.

(5) The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time on or before March 31, 1977.

Social Security claimants are entitled to judicial review of a final decision of the Secretary commenced within sixty days after that decision. The District Court has the power to enter a judgment affirming, modifying or reversing the decision of the Secretary. 42 U.S.C. § 405(g). This section

further provides that any finding of fact supported by substantial evidence shall be conclusive on the reviewing court. Substantial evidence is defined in *Celebrezze v. Bolas,* 316 F.2d 498 (8th Cir. 1963), as ". . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole."

▮ Pain can be a disability within the meaning of the Social Security Act. *Benson v. Mathews,* 554 F.2d 860 (8th Cir. 1977); *Northcutt v. Califano,* No. 77–1977, 581 F.2d 164 (8th Cir. 1978). In the instant case, there is absolutely no doubt but that plaintiff has had and continues to experience pain, up to the time her insured status ended. The subjective nature of pain, which renders it difficult to analyze accurately, has been compounded in this case by the fact that the actual origin of plaintiff's pain was unknown.

Dr. Hayes stated that her pain was real, but not disabling. He felt that additional investigation was warranted. Another physician came to the conclusion that her physical complaints left her disabled. The plaintiff testified that her pain was constant and disabling. The Administrative Law Judge discounted her testimony because she questioned his review of the medical evidence.

We would grant summary judgment for the Secretary. The time has long since past when Judge Learned Hand's statement that, "[t]he only work available to the insured must do more than hurt, it must substantially aggravate his malady" can be applied to Social Security cases. *Theberge v. United States,* 87 F.2d 697, 698 (2nd Cir. 1937).

▮ In *Butler v. Fleming,* 288 F.2d 591, 595 (5th Cir. 1961), the court stated:

If . . . Judge Learned Hand's statements in *Theberge v. United States,* (citation omitted) concerning a different statute enacted for a different policy in a different era, are to stand for the proposition that pain, no matter how severe, is not disabling unless work does "more than hurt" so that it "substantially aggravate[s] his malady", (citation omitted) we regard them as contrary to the standard announced in *Booker* [*Flemming v. Booker,* D.C., 168 F.Supp. 291] and *Kerner* [*Kerner v. Flemming,* 2 Cir., 283 F.2d 916] and many others like them. . . . [T]he purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act.

Despite the liberalized view on the subjective complaint of pain, the burden of proving inability to return to former employment due to pain rests with claimant. *Dressel v. Califano,* 558 F.2d 504–507 (8th Cir. 1977).

The Eighth Circuit in *Beryen v. Gardner,* 414 F.2d 857, 860 (8th Cir. 1969), stated:

Where all of the medical testimony or expert opinions support or tend to support the claim of the appellant that she was disabled within the meaning of the statute in and prior to June 1959 and no medical or other testimony appears to the contrary, then we believe that a finding by the Secretary to the effect that disability was not established is not supported by substantial evidence and must be set aside.

The relevant medical evidence in this case, however, does not support plaintiff's claim of disability. Her complaints of disability due to adhesions appear to be unjustified. The adhesions were medically adjusted prior to June 30, 1976, and no significant reoccurrence necessitating hospitalization appears in the record. Dr. Hayes felt that the pain, although real, was not disabling. He suggested further investigation, but it does not appear that prior to June 30, 1976, plaintiff participated in any other medical examination which determined the source of the pain, or established its incapacitating degree, if any.

We can sympathize with plaintiff's plight, and might have reached a different conclusion had we the right to consider all of the medical evidence introduced by plaintiff. However, we cannot accept evidence after the insured status date without accompanying data convincing the Court that the results found to exist after the insured status ended, existed in the same degree prior to that deadline.

The resolution of basically subjective pain cases does not come easy and recent Eighth Circuit decisions seems to dictate and advise that subjective pain does not necessarily need to be totally fortified by objective findings. *Klug v. Weinberger,* 514 F.2d 423, 427 (8th Cir. 1975); *Yawitz v. Weinberger,* 498 F.2d 956 (8th Cir. 1974); *Murphy v. Gardner,* 379 F.2d 1 (8th Cir. 1967); *Northcutt v. Califano, supra.* However, we are inclined to respect the credibility findings of the Administrative Law Judge, who saw and heard the witnesses in this case.

We, therefore, grant summary judgment to the Secretary and deny plaintiff's motion for summary judgment. The District Clerk will enter an order so providing.