**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SUZETTE L. MANN,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 08-5003
(D.C. No. 4:06-CV-00335-SAJ)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

        Suzette L. Mann appeals from a district court order that affirmed the

Commissioner's denial of disability insurance benefits (DIB) and supplemental

security income (SSI). She argues that the Administrative Law Judge (ALJ)

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

assigned to her case erred in (1) determining her residual functional capacity (RFC) and (2) discounting her credibility. We affirm.

<u>**BACKGROUND**</u>

Mann has worked in the fast-food and aircraft-assembly industries. She claims that she can no longer work because of pain from a fractured right ankle that Dr. Karl Sauer surgically repaired in February 2001. Several weeks after that surgery, Dr. Sauer noted that "[t]he hardware [was] in [an] acceptable position," but that one of the "three Kirschner wires" used to immobilize the fracture was "protrud[ing] through the posterior cortex" and "could be causing [Mann] some of the intermittent discomfort that she has." Aplt. App. at 107, 122. Four months after the surgery, in June 2001, Dr. Sauer found that there was "no instability involving the right ankle" and that the fractures were "in good position," with "good healing." *Id.* at 121. He also noted that Mann was "having no problems." *Id.*

Dr. Donald Riley saw Mann in January 2002 for right ankle pain, and considered having her "evaluat[ed] for possible hardware removal." *Id.* at 124. Additionally, he diagnosed her with "probable osteoarthritis of the right ankle" and prescribed an anti-inflammatory drug. *Id.* Dr. Riley next saw Mann in April 2002, when he refilled her prescription and recommended that she see an orthopedic specialist for her ankle. Mann quit working two months later, in June 2002.

-2-

In February 2003, Mann went to the emergency room, complaining of ankle pain. X-rays revealed that one of the Kirschner wires was "loose." *Id.* at 129. The attending physician, Dr. Tony Hill, diagnosed Mann with right ankle pain, but he questioned the significance of the loose wire. *Id.* at 130. He prescribed Mann an anti-inflammatory drug and a pain reliever, and he recommended that she see an orthopedic specialist.

Mann did not seek further medical treatment. Instead, she sought DIB and SSI in December 2003. Dr. Angelo Dalessandro, a consultative physician, examined Mann and noted that she walked with a slight limp and used a cane, but had a "normal gait to speed, stability, and safety" and could "ambulate without [her] cane." *Id.* at 136. Two agency consultants reviewed Mann's records and concluded that she had the RFC to occasionally lift and carry ten pounds, frequently lift and carry five to ten pounds, stand and walk two hours in a work day, and sit for six hours in a work day.

At her disability hearing in August 2005, Mann testified that she has not sought medical treatment since her February 2003 emergency-room visit because she cannot afford it. As for her limitations, she testified that she uses a cane, can stand for only two minutes, and cannot "walk very far" before having to sit and "prop [her ankle] up." *Id.* at 181. When her pain becomes "really" bad she takes Ibuprofen. *Id.* at 185. But her testimony is not clear as to the extent it relieves her pain.

A vocational expert (VE) testified that if Mann's testimony were to be believed, Mann could not perform her past work or any other work in the national economy. But in response to a hypothetical posed by the ALJ, the VE identified work in the national economy, such as a check cashier, that could be performed by a claimant who possesses the same RFC identified by the agency consultants and who also suffers from "mild to moderate to occasional chronic pain," *id.* at 188, uses a cane, and needs to "shift her weight" while standing or sitting, *id.* at 189.

In his written decision, the ALJ adopted the consultants' RFC determinations and added the other limitations from the hypothetical he posed to the VE. The ALJ then concluded at step five of the familiar five-step sequential evaluation process that Mann was not disabled, as there were jobs in the national economy that she could perform. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (noting that when a disability claimant shows that her limitations preclude past work, the burden shifts to the Commissioner at step five "to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience"). In doing so, the ALJ found Mann's testimony about her pain not entirely credible.

After the Appeals Council denied Mann's request for review, she sought relief from the federal district court. Unsuccessful, she now appeals.

DISCUSSION

I. Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal*, 331 F.3d at 760.

II. RFC

Mann argues that the ALJ erred in formulating her RFC because he ignored "[t]he findings of Mann's treating physicians, including the instruction[s] to see an orthopedic specialist and [the] finding of loose surgical hardware." Aplt. Br. at 10-11. She relies on the well-settled rule that the ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and italics omitted). But the ALJ did not reject any treating physician's opinion. Indeed, none of Mann's treating physicians offered any opinion about her

functional limitations. And we cannot fault the ALJ for failing to divine some limitation from Dr. Riley and Dr. Hill's instructions that Mann see a specialist. As for the surgical hardware, its relevance is unclear. Dr. Sauer noted that a Kirschner wire was "protrud[ing]." Aplt. App. at 122. But he surmised that it was causing only "intermittent discomfort," *id.*, and he did not mention it all in his final progress note, indicating instead that Mann was "having no problems," *id.* at 121. Dr. Hill found that a Kirschner wire was "loose," but he questioned its medical significance. *Id.* at 130. And while Dr. Riley suggested that Mann be evaluated to determine whether the "hardware" should be removed, *id.* at 124, he did not offer an opinion as to how it was affecting Mann.

We conclude that the ALJ's RFC determination is not at odds with the opinions of Mann's treating physicians.

### III. Credibility

Mann argues that the ALJ improperly discredited her subjective complaints of disabling pain. We disagree.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett*, 395 F.3d at 1173 (quotation omitted). In assessing the credibility of pain testimony, various factors are relevant, including:

> the levels of medication and their effectiveness, the extensiveness of
> the attempts (medical or nonmedical) to obtain relief, the frequency
> of medical contacts, the nature of daily activities, subjective

> measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quotation omitted).

In finding Mann's allegations of disabling pain not entirely credible, the ALJ relied on three points. First, he stated that Mann's "ankle fracture ha[d] properly healed." Aplt. App. at 19. Dr. Sauer said roughly as much in his final medical entry, noting that the fractures were properly positioned and exhibited good healing. Second, the ALJ referenced Dr. Dalessandro's observation that Mann walked normally, albeit with a slight limp, and could ambulate without her cane. None of Mann's other physicians suggested any contrary opinions. And third, the ALJ commented that Mann "has had no treatment of the ankle [for nearly two-and-a-half years]" and that if her pain "were as intense as she testified, she would secure more" than over-the-counter pain relievers. *Id.* Insubstantial or infrequent attempts to obtain relief from a painful condition are inconsistent with allegations of disabling pain. *See Branum*, 385 F.3d at 1274. While Mann claims that her poverty prevents her from seeking further medical care or prescription pain medication, she has provided no evidence that she "sought to obtain any low-cost medical treatment from her doctor or from clinics and hospitals" or that she has "been denied medical care because of her financial condition." *Murphy v.*

*Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992); *cf. Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) (indicating "that inability to pay may provide a justification for [the] claimant's failure to seek treatment" when there is evidence that the claimant sought and was refused treatment). Nor does she dispute the ALJ's assertion that prescription pain relievers are "often available at free health clinics." Aplt. App. at 19.

We conclude that the ALJ's decision to discredit Mann's pain testimony is supported by substantial evidence.

### CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge